UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DION FISHER,

v.                              Case No. 8:18-cr-236-VMC-TGW
                                         8:23-cv-652-VMC-TGW

UNITED STATES OF AMERICA.

_____/

## ORDER

This matter is before the Court on Dion Fisher's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 281). The United States of America responded on August 11, 2023. (Civ. Doc. # 12). Mr. Fisher filed a reply on March 10, 2024. (Civ. Doc. # 17). The Motion is denied in part and deferred in part to the extent explained below.

## I.   Background

A grand jury indicted Mr. Fisher on 15 counts, charging him with conspiring to manufacture, possess with intent to distribute, and distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846 (Count 1); possessing with intent to distribute and distributing fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Counts 2-4); possessing with intent to distribute 40 grams or more of fentanyl, in violation of 21

1

U.S.C. § 841(a)(1) (Count 5); possessing with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 6); possessing with intent to distribute pentylone, in violation of 21 U.S.C. § 841(a)(1) (Count 7); and engaging in illegal monetary transactions, in violation of 18 U.S.C. §§ 1957 and 2 (Counts 9–16). (Crim. Doc. # 1).

During the relevant periods of trial preparation and trial, Mr. Fisher was represented by Kenneth Martin. Mr. Martin filed a motion to suppress on Mr. Fisher's behalf, seeking to suppress items seized from his house and person. (Crim. Doc. # 111). While Mr. Fisher conceded that there was a search warrant for his residence, he contended that the evidence obtained pursuant to the search warrant should nevertheless be suppressed because he was not detained in the immediate vicinity of the premises and the length of his detention during the search was unreasonable. (Id.). Indeed, when the search warrant was served, Mr. Fisher was not inside his residence. Rather, he was in an Uber, which police pulled over in order to detain Mr. Fisher. Mr. Fisher was then held in the back of a police car for hours while his residence was searched. (Id. at 1-2).

The Magistrate Judge held a hearing on the motion to suppress on April 15, 2019. (Crim. Doc. # 138). The Magistrate Judge issued a Report and Recommendation, recommending that the motion to suppress be denied because "law enforcement legally seized the property from [Mr. Fisher's] residence pursuant to a valid search warrant" and, "regardless of whether [Mr. Fisher] was detained in the immediate vicinity of his residence during the search, law enforcement had probable cause to arrest [Mr. Fisher] even before [the deputy] stopped him that day." (Crim. Doc. # 152 at 18). Mr. Fisher failed to file an Objection to the Report and Recommendation. The Court adopted the Report and Recommendation and denied the motion to suppress on May 21, 2019. (Crim. Doc. # 172).

Using court funding, Counsel for Mr. Fisher had hired a chemistry expert, Janine Arvizu, to review the reports and testing methods of the DEA and Pinellas County laboratories used by the government to test the drugs Mr. Fisher possessed. (Crim. Doc. # 162 at 1; Crim. Doc. # 283 at 3-5). At an ex parte hearing before the Magistrate Judge in early May 2019, counsel for Mr. Fisher requested approval for additional funding to bring Arvizu from New Mexico, where she lives, to Tampa for a Daubert hearing and trial. (Crim. Doc. # 283 at 3). However, because of the death of Arvizu's husband and a

3

broken arm, Arvizu had not provided further proffers or a supplemental report to defense counsel. (Id. at 3). Ultimately, the Magistrate Judge denied Mr. Fisher's request for additional funding to bring the expert to a Daubert hearing and trial:

> Well, I don't think this is close. I mean, the amount of money you are asking for to bring somebody from New Mexico just doesn't seem reasonable to me, so I'm gonna deny the motion. I'll note that — because you have already gotten some approval from the Court of Appeals and she's given a report, so it seems to me you can use what's in that report and what she's told you to cross-examine the Government experts when they go to introduce their tests. But, otherwise, I'm gonna deny the motion.

(Id. at 9). Because counsel was unable to obtain additional funding for the chemistry expert to testify at a Daubert hearing or trial, the scheduled Daubert hearing to address the admissibility of the chemistry expert was cancelled. (Crim. Doc. ## 159, 162, 163).

The case then proceeded to a seven-day jury trial beginning in late May 2019. During trial, Mr. Fisher's co-defendant, Samuel Blaine Huffman, and some of his co-conspirators testified against him. (Crim. Doc. ## 186, 188, 191, 193, 194). No chemistry expert testified on Mr. Fisher's behalf. Three other witnesses are also relevant here:

Detective Karl Gwynne, Diane Knott, and Roman Hernandez. (Crim. Doc. # 193; Crim. Doc. # 194).

Gwynne had been inadvertently left off the government's witness list at trial, so Mr. Fisher's counsel objected to Gwynne's testifying. (Crim. Doc. # 268 at 84-97). Because Gwynne would be testifying only as an evidence custodian and Mr. Fisher could not articulate any prejudice he would suffer from the admission of Gwynne's testimony, the Court overruled Mr. Fisher's objection. (Id. at 96). After the ruling, the Court took a recess of almost an hour, which gave Mr. Fisher's counsel some time to prepare. Thereafter, Gwynne testified as an evidence custodian for the non-drug evidence seized from Mr. Fisher's home, including receipts and records pertaining to jewelry, cars, wire transfers, and bank accounts. (Id. at 108-182).

Diane Knott and Roman Hernandez also testified at the trial. (Crim. Doc. # 272 at 110-187). Knott is a former IRS-CI agent and supervisor who was employed as a financial analyst with the U.S. Attorney's Office at the time of trial. She testified about her review of Mr. Fisher's financial records and the financial transactions underlying the money laundering counts (Counts Nine-Sixteen). (Id. at 130-188). Hernandez is an IRS employee who testified that he found no

tax records filed with the IRS for Mr. Fisher or Mr. Fisher's various companies. (Id. at 110-117). Counsel did not object to the testimony of either Knott or Hernandez.

The jury ultimately found Mr. Fisher guilty of Counts One-Six and Counts Nine-Sixteen. (Crim. Doc. # 200). He was found not guilty of Count Seven, the charge of possession with intent to distribute a mixture or substance containing a detectable amount of pentylone. (Id. at 5).

For the sentencing and appellate phases, Mr. Fisher was represented by Matthew Farmer. In advance of sentencing, counsel submitted multiple objections to the presentence report, including to the two-level aggravating role enhancement for being an organizer or manager. (Crim. Doc. # 244 at 26-27). Counsel also filed a sentencing memorandum on Mr. Fisher's behalf, arguing that a guidelines sentence of life imprisonment would be excessive. (Crim. Doc. # 248). Although the co-defendant and three co-conspirators had all pled guilty and all cooperated with the government in its case against Mr. Fisher, counsel wrote that "a life sentence for Mr. Fisher, even reflecting an aggravating role adjustment, would constitute an unwarranted sentencing disparity." (Id. at 3). A life sentence for Mr. Fisher "would effectively [be] four times more severe" than the most-

heavily punished co-conspirator, Mr. Morose, received (120 months' imprisonment). (Id.).

During sentencing, counsel argued again that Mr. Fisher should receive a lower sentence than life. (Crim. Doc. # 270). He objected to the aggravating role enhancement, insisting that Mr. Fisher was not more culpable than his co-defendant and co-conspirators. (Id. at 12-13). The Court overruled this objection. (Id. at 16). Counsel also emphasized the disparity that would exist between Mr. Fisher and his co-defendant and co-conspirators (the highest sentence for which was 120 months) if Mr. Fisher were given a 30- or 40-year sentence. (Id. at 28-29). Counsel requested a sentence of 120 months' imprisonment. (Id. at 29). The Court ultimately sentenced Mr. Fisher to a below guidelines sentence of 360 months' imprisonment on October 31, 2019. (Crim. Doc. # 250).

Mr. Fisher appealed. (Crim. Doc. # 252). On appeal, counsel argued that Mr. Fisher's motion to suppress should have been granted and Gwynne should not have been allowed to testify. (Crim. Doc. # 278); see also United States v. Fisher, No. 19-14423, 2021 WL 6101255 (11th Cir. Dec. 21, 2021). The Eleventh Circuit Court of Appeals affirmed Mr. Fisher's conviction and sentence. (Id.). Mr. Fisher's petition for

writ of certiorari was denied on April 25, 2022. (Crim. Doc.
# 280).

Now, Mr. Fisher seeks to vacate his conviction and
sentence, raising numerous grounds of ineffective assistance
of both trial and sentencing/appellate counsel. (Civ. Doc. #
1; Crim. Doc. # 281). He has filed his sworn declaration in
support of his Motion. (Civ. Doc. # 1-1). The United States
has responded (Civ. Doc. # 12), along with the affidavits
from Mr. Martin and Mr. Farmer. (Civ. Doc. # 12-1; Civ. Doc.
# 12-3). Mr. Fisher has replied. (Civ. Doc. # 17). The Motion
is ripe for review.

## II.  **Discussion**

Mr. Fisher raises eleven grounds for relief in his 2255
Motion itself, as well as three construed grounds for relief
in his declaration.[1] All grounds raise claims of ineffective
assistance of either trial or appellate counsel. (Civ. Doc.
# 1). These claims have been timely raised and are cognizable.
(Civ. Doc. # 12 at 5-6). Mr. Fisher bears the burden of proof
and persuasion on every aspect of his claims. Beeman v. United

---

[1] Mr. Fisher numbered his arguments to include two Ground
Fours and two Ground Sevens. For ease of reference, the
arguments will be referred to as the first and second of each
respective ground.

States, 871 F.3d 1215, 1223-24 (11th Cir. 2017); Rivers v.
United States, 777 F.3d 1304, 1316 (11th Cir. 2015).

To prevail on a claim of ineffective assistance of
counsel, a petitioner must show that (1) his counsel's
performance was deficient, and (2) the deficient performance
prejudiced his defense. Strickland v. Washington, 466 U.S.
668, 687 (1984). To establish deficient performance, Mr.
Fisher must demonstrate by a preponderance of the evidence
"that particular and identified acts or omissions of counsel
'were outside the wide range of professionally competent
assistance.'" Chandler v. United States, 218 F.3d 1305, 1314
(11th Cir. 2000) (citations omitted). In other words, Mr.
Fisher must show that "no competent counsel would have taken
the action that his counsel did take." Id. at 1315. In
deciding whether an attorney's performance was deficient,
courts are "highly deferential" and "indulge [the] strong
presumption that counsel's performance was reasonable and
that counsel made all significant decisions in the exercise
of reasonable professional judgment." Id. at 1314 (internal
quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr.
Fisher must show that "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[I]f a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." Ortiz v. United States, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

The Court will address each ground in turn.[2]

## A.   **Ground One**

In Ground One, Mr. Fisher argues that trial counsel, Mr. Martin, provided ineffective assistance by "fail[ing] to object to [Rule] 404(b) evidence being presented at trial." (Civ. Doc. # 1 at 2). He asserts that "[c]ounsel's performance

---

[2] The Court does not read Mr. Fisher's reply as attempting to raise any new grounds for relief. However, to the extent Mr. Fisher's reply (Civ. Doc. # 17) could be somehow construed as raising additional grounds for relief, the Court declines to consider such improperly raised grounds. See Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) ("[T]he district court did not violate Clisby by failing to address his claim that his counsel was ineffective for failing to object to the sentencing court's U.S.S.G. § 2B1.1(b)(11)(C)(i) enhancement. Oliveiri did not present this claim in his § 2255 motion, but rather raised it for the first time in his reply to the government's response. By doing so, he waived the claim. Although Clisby requires a district court to resolve every claim properly presented in a § 2255 motion, it does not require the court to address a claim that a movant waives by failing to raise it until his reply brief." (citations omitted)).

fell below an objective standard of reasonableness when Counsel failed to object to the testimony of Ms. Diane Knott" as 404(b) evidence. (Id.). Mr. Fisher "contends that counsel's deficient performance prejudiced him by allowing 404(b) character evidence of other crimes, wrongs, or acts being admitted without objection, where the law prohibits the use of such evidence being presented, unless a hearing was held prior to its admission." (Id.).

Similarly, in his declaration, Mr. Fisher raises the failure of trial counsel to object to the testimony of IRS employee Roman Hernandez. (Civ. Doc. # 1-1 at 4). He states: "During the testimony of [] Hernandez, I continuously asked my counsel to object to his testimony because it sounded like he was testifying to other crimes, wrongs, or acts that may have been committed by me. Counsel ignored me and failed to object to his testimony and failed to cross examine the witness." (Id.). Thus, Mr. Fisher insists that counsel was ineffective for not raising an objection under Rule 404(b) to Hernandez's testimony.

This argument fails as to both Knott and Hernandez. Neither Knott nor Hernandez presented 404(b) evidence of other wrongs at trial. Rather, the government is correct that it did not present any 404(b) evidence at trial. (Civ. Doc.

11

# 14 at 13). The testimony of both Knott and Hernandez, which reviewed Mr. Fisher's tax and financial records, did not concern other "wrongs." This testimony was directly relevant to proving that Mr. Fisher had committed money laundering — charges at issue at trial. Indeed, Mr. Martin explains in his affidavit that he did not object to Knott as a witness because he "believed the testimony of [] Knott was admissible." (Civ. Doc. # 12-1 at 5).

Because the testimony of Knott and Hernandez was directly relevant to charges on trial, the Court would have denied any objection to their testimony based on Rule 404(b) as meritless. Thus, counsel was not ineffective for failing to raise such an objection. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). And Mr. Fisher was not prejudiced by that failure. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

The Motion is denied as to this Ground.

## B. **Ground Two**

Next, Mr. Fisher argues that "[c]ounsel's performance fell below an objective standard of reasonableness when

12

Counsel failed to [n]egotiate a plea agreement that would have minimized the sentencing exposure, instead of proceeding to trial, which yielded a sentence of 30 years." (Civ. Doc. # 1 at 4). According to Mr. Fisher, "he had asked Counsel to negotiate and see what the government was offering in terms of a plea bargain." (Id.). But, allegedly, "Counsel never informed petitioner of what the government had offered in the form of a plea bargain," and "never presented a plea offer, even after [Mr. Fisher] made a request to seek one." (Id.).

Mr. Fisher supports his allegations with a sworn declaration. (Civ. Doc. # 1-1). Among other things, he declares: "During the time period of being represented by counsel [Mr.] Martin, and right before trial, we discussed the odds of winning in trial and losing. I asked counsel to negotiate a plea agreement. I asked him to relay a proposal that I am willing to plead guilty to several money laundering charges in a plea deal that I only receive a five (5) year prison sentence." (Id. at ¶ 4). But, Mr. Fisher swears, "counsel never asked the government, to [his] knowledge, about a plea bargain, and never gave [Mr. Fisher] any suggested plea offers from the government." (Id. at ¶ 5). He maintains that "Counsel forced [him] to go to trial." (Id.).

In response, the United States relies on the affidavit of trial counsel, Mr. Martin, which rebuts Mr. Fisher's Motion and declaration. (Civ. Doc. # 12 at 7-9). Mr. Martin avers that he "advised Mr. Fisher that [counsel] had been in criminal courts for over twenty years, in a variety of roles (defense attorney, prosecutor, and judge) and this was the strongest government case [counsel] had ever seen." (Civ. Doc. # 12-1 at 5). Mr. Martin "advised Mr. Fisher the evidence against him was overwhelming and he should expect to be convicted." (Id.). According to Mr. Martin, "Mr. Fisher knew it was his decision whether to plead guilty or go to trial" and "knew [counsel's] advice to him was to enter into a plea agreement/plead guilty, cooperate with the government and do everything he could to lessen his sentence." (Id.). Yet, "Mr. Fisher disregarded [counsel's] advice and wanted to go to trial, which is his right." (Id.).

Furthermore, Mr. Martin swears that the "allegations made in Ground Two of the Motion that Mr. Fisher asked me to negotiate a plea agreement, find out what the government was offering, and never informed Mr. Fisher about a plea agreement are false." (Id. at 3). Mr. Fisher never asked him to negotiate a plea agreement. (Id.). Rather, according to Mr. Martin, "Mr. Fisher was adamant he did not want a plea

deal/bargain or to plead guilty to anything." (Id.). Mr. Fisher allegedly told counsel "on numerous occasions when we discussed the government's proffered plea agreement or plea agreements in general he was not interested in any plea agreement/bargain." (Id.).

The Supreme Court has explained that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). "[I]n order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (citation omitted).

The sworn statements of Mr. Fisher and Mr. Martin are directly in conflict. If Mr. Fisher's declaration is true, then trial counsel's performance was likely deficient, and

Mr. Fisher was likely prejudiced. The evidence is undisputed that, in November 2018, the United States sent to Mr. Fisher's trial counsel a proposed plea agreement, under which Mr. Fisher would agree to plead guilty to Counts One (conspiracy to distribute controlled substances) and Twelve (money laundering) and all other counts would be dismissed. (Civ. Doc. # 12-2). Taking Mr. Fisher's declaration as true, Mr. Fisher was never told about this plea offer so had no opportunity to accept it. (Civ. Doc. # 1-1 at 2). According to Mr. Fisher, he "would have plead[ed] guilty to certain criminal offenses listed in the indictment." (Civ. Doc. # 1 at 4). Furthermore, according to him, Mr. Fisher wanted counsel to convey to the government a plea offer under which he would plead guilty to multiple counts of money laundering if he would receive only a five-year sentence. (Civ. Doc. # 1-1 at 2). He alleges that counsel never conveyed his desired plea terms to the government, which prevents the Court from determining whether the government would have accepted such a plea agreement. (Id.).

In sharp contrast, if Mr. Martin's affidavit is true and Mr. Martin conveyed the plea offer to Mr. Fisher, then Mr. Fisher's ineffective assistance of counsel claim would fail. Under this version of events, Mr. Fisher was aware of the

16

plea offer but declined to accept that plea offer or any other plea agreement.

Therefore, the Court defers ruling on the Motion as to Ground Two so that an evidentiary hearing can be held on this Ground. After hearing testimony at an evidentiary hearing, the Court will be able to make the credibility determinations necessary to resolve the dispute over this claim.

    **C.**   **<u>Ground Three</u>**

In this Ground, Mr. Fisher argues that his trial counsel was ineffective because "he failed to request a multiple conspiracy jury instruction which prevented the jury from considering the possibility that [Fisher] was part of a smaller conspiracy, or even a buyers-seller relationship, and not the larger conspiracy." (Civ. Doc. # 1 at 4). Mr. Fisher maintains that "the evidence presented during trial varied impermissibly from that in the charging indictment," such that "the proper instructions to the jury . . . would have placed reasonable doubt that as to whether [Mr. Fisher] was actually involved in a conspiracy or a buy-sell agreement." (<u>Id.</u> at 4-5).

This claim fails. Trial counsel was not ineffective for choosing not to request a multiple conspiracy jury instruction. "Generally, a multiple conspiracy instruction is

required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could *reasonably conclude* that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Calderon, 127 F.3d 1314, 1328 (11th Cir. 1997), holding modified by United States v. Toler, 144 F.3d 1423 (11th Cir. 1998). Here, trial counsel did not request such instruction because he "felt the evidence presented supported the counts in the indictment with the exception of the count Mr. Fisher was found not guilty." (Civ. Doc. # 12-1 at 6). Trial counsel "did not believe there was a variance issue with the jury instructions and charging indictment." (Id.).

The Court is not persuaded that trial counsel's performance was deficient for reasonably concluding that there was no basis to request a multiple conspiracy jury instruction. See Card, 911 F.2d at 1520 ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). Nor is it likely that the Court would have agreed to include a multiple conspiracy instruction in the jury instructions in this case. There was no basis at trial to reasonably conclude that Mr. Fisher was only involved in

smaller, separate conspiracies unrelated to the overall conspiracy charged in the indictment.

The Motion is denied as to this Ground.

D. **First Ground Four**

Next, Mr. Fisher asserts that trial counsel Mr. Martin was ineffective for failing "to 'specifically write objections' within the time set by the court within fourteen days of being served with the magistrate's report and recommendation." (Civ. Doc. # 1 at 5). This prejudiced him, according to Mr. Fisher, because he was "not [] able to appeal the district court's order regarding the Motion to Suppress [] on the issues of Fourth Amendment protections." (Id.).

This claim also fails. True, trial counsel did not file an objection to the Magistrate's Report and Recommendation, which recommended that Mr. Fisher's motion to suppress be denied. By that failure to object, Mr. Fisher was only able to challenge the ruling on the motion to suppress under plain error review, though the appellate court found that Mr. Fisher had abandoned that argument. (Crim. Doc. # 278 at 8-10).

Nevertheless, Mr. Fisher was not prejudiced by the failure to file an objection. No objection by counsel would have altered this Court's ruling on the motion to suppress, nor led the appellate court to find that the evidence should

19

have been suppressed. As the Magistrate explained in his Report and Recommendation (Crim. Doc. # 152), which this Court adopted (Crim. Doc. # 172), there was no basis to exclude the evidence from the search of Mr. Fisher's residence based on law enforcement's holding Mr. Fisher in a police car for multiple hours during the search. Again, the police searched Mr. Fisher's residence pursuant to a valid search warrant and there was already probable cause to arrest Mr. Fisher before the search. There simply were no grounds to exclude the evidence obtained pursuant to the search warrant. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Furthermore, even if the evidence at issue in the motion to suppress had been suppressed, Mr. Fisher still would have been convicted. Much of the evidence against Mr. Fisher was not obtained from the search of his person and residence (the evidence he sought to suppress). See (Crim. Doc. # 266 at 186-221) (evidence that significant amounts of fentanyl in various forms were found in Mr. Fisher's storage unit); (Crim. Doc. # 267 at 109-130) (testimony about McKinney's controlled call to Mr. Fisher and subsequent purchase of over 1,500 fentanyl pills from Mr. Fisher). For this reason, trial counsel explained to Mr. Fisher that "because the motion [to

suppress] only related to the search of Mr. Fisher and his house, it was not dispositive." (Civ. Doc. # 12-1 at 3). Thus, even if the motion to suppress had been granted, Mr. Fisher has not established a reasonable probability of a different outcome at trial.

To the extent Mr. Fisher also faults trial counsel for not filing an interlocutory appeal of the denial of his motion to suppress (Civ. Doc. # 1-1 at 5), this argument also fails. There was no jurisdictional basis for the Eleventh Circuit Court of Appeals to hear an interlocutory appeal of the non-final order denying Mr. Fisher's motion to suppress. See 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from **all final decisions** of the district courts of the United States." (emphasis added)); United States v. Shalhoub, 855 F.3d 1255, 1260 (11th Cir. 2017) ("We apply the final judgment rule with 'utmost strictness in criminal cases,' unless the challenged order falls within the collateral order doctrine, which permits appellate review of an interlocutory order that (1) 'conclusively determine[s] the disputed question,' (2) 'resolve[s] an important issue completely separate from the merits of the action,' and (3) is 'effectively unreviewable on appeal from a final judgment.'" (citations omitted)).

Thus, trial counsel was not deficient for failing to file an interlocutory appeal and Mr. Fisher was not prejudiced by such failure.

The Motion is denied as to this Ground.

### E.   <u>Second Ground Four</u>

In his second Ground Four, Mr. Fisher argues that his trial counsel, Mr. Martin, was ineffective for "fail[ing] to move the district court for a continuance so he could adequately prepare for [witness Detective Gwynne] that was not on the witness list, and placed on the stand to testify without proper notice from the government." (Civ. Doc. # 1 at 5-6). Although Mr. Fisher insists that counsel should have "asked for a continuance to better prepare for [Gwynne's] testimony" (<u>Id.</u>), he fails to articulate how counsel's preparing for a longer time before cross-examining Gwynne would have altered his trial. At most, Mr. Fisher seems to think that if a continuance had been granted, counsel could have better "articulate[d] to the court what harm could result from the admission of Gwynne's testimony" so that such testimony would not be admitted — not an allegation that counsel would have better cross-examined Gwynne if he had obtained a continuance. (<u>Id.</u> at 6).

This argument fails. Trial counsel objected to Gwynne being permitted to testify because the government had inadvertently left Gwynne off its witness list. (Crim. Doc. # 268 at 84-97). The Court, however, overruled counsel's objection and held that Gwynne would testify after an approximately hour-long break during which counsel could prepare. (Id.). Mr. Fisher has not shown that counsel would have somehow impeached Gwynne's testimony if counsel had more time to prepare for Gwynne's testimony.

And, indeed, there's no reason to think that Fisher was prejudiced by counsel's not obtaining a continuance to prepare for Gwynne's testimony. As Mr. Martin explains in his affidavit, trial counsel "was prepared for the witness . . . primarily because he was simply an inventory witness for items seized during a search." (Civ. Doc. # 12-1 at 6).

Likewise, to the extent Mr. Fisher believes Gwynne should not have been permitted to testify because his motion to suppress should have been granted (Civ. Doc. # 1 at 6), any objection on the basis that the evidence about which Gwynne testified should have been suppressed would have been denied by the Court. The motion to suppress had been denied by the Court and the Court would not have revisited that decision at trial.

The Motion is denied as to this Ground.

**F.    Ground Five**

Next, Mr. Fisher contends that trial counsel, Mr. Martin, was ineffective for "fail[ing] to ask the court for a continuance at the Daubert hearing." (Civ. Doc. # 1 at 6). According to Mr. Fisher,

> Counsel was unprepared for trial and the testimony given by the chemist for the government. Counsel's deficient performance prejudiced petitioner in [the] Daubert hearing where had counsel made a verbal motion for continuance, our chemist would have been able to place reasonable doubt on the government's witnesses, and would have allowed [him] to be better prepared for the expert testimony from the government's witnesses. (20 Chemist) Furthermore, Counsel failed to file an interlocutory appeal asking the appeals court to review the district court's factual findings and its legal conclusions, regarding the decision rendered by the judge, at the Daubert hearing.

(Id.).

The chemist, Ms. Arvizo, whom Mr. Martin hired with Court funding, had come "highly recommended by the Middle District Federal Public Defender's Office for both her expertise and reliability." (Civ. Doc. # 12-1 at 6). But two unfortunate circumstances in Ms. Arvizo's life, a serious fracture of her arm and her husband's death, resulted in her not providing the additional proffers she was hired to provide. (Id. at 6-7). Mr. Martin explains in his affidavit that, after Ms.

Arvizo's husband died in early May 2019, he "realized [that] what [he] already had from her was what [he] had to work with and that [he] should not expect anything from her in the near future." (Id. at 7). Trial counsel realized that he "needed to prepare for Court knowing [he] would probably not receive those proffers and [their] scheduled preparation session for her testimony would probably not occur." (Id.). Indeed, trial counsel "did not receive those proffers" and he and the chemist "did not have our scheduled telephonic preparation call." (Id.). Going into the ex parte hearing with the Magistrate to request additional funding, trial counsel "was frustrated but tried to do the best [he] could with what [he] had" and "tried to preserve the issue on the record as best [he] could under the circumstances." (Id.). At the ex parte hearing, the Magistrate denied counsel's request for additional funding for the chemist.

Counsel was not ineffective for not requesting a continuance of the Daubert hearing. As an initial matter, no Daubert hearing actually took place in this case. The reason a Daubert hearing did not take place — and no merits ruling on the government's Daubert motion to exclude the chemist as unqualified was issued — was not trial counsel's failure to request a continuance. As mentioned before, at an ex parte

hearing before the Magistrate, the Magistrate denied trial counsel the additional CJA funding necessary for the chemist to appear and testify at a Daubert hearing or trial. Although counsel had shown the Magistrate the report the chemist had given him along with his motion for additional funding, the Magistrate Judge did not think additional funding was appropriate. (Crim. Doc. # 283 at 3-9). The Magistrate noted that trial counsel could still use the information he learned from his conferral with the chemist and the chemist's earlier report to inform counsel's cross-examination of the government's chemistry experts. (Id. at 9). It is pure speculation whether, if the chemist had been able to provide the additional proffers to counsel to present to the Magistrate, the Magistrate would have granted the requested funding.

While the situation with the chemist was unfortunate, trial counsel was not ineffective in his handling of the situation. He had conferred once with the chemist and had obtained a report from her, even though the chemist never provided the additional proffers she had promised. Counsel properly attempted to obtain the additional funds necessary to have the chemist testify at the Daubert hearing and, if she were not excluded as an expert, at trial. Because that

request for the necessary additional funding was denied, a
continuance — rather than a cancellation of — the Daubert
hearing would not have made any difference to Mr. Fisher's
case. It was the denial of trial counsel's request for
additional funding by the Court — rather than trial counsel's
performance — that prevented a chemistry expert from
testifying on Mr. Fisher's behalf at trial. See (Crim. Doc.
# 159 at 1-2) ("The defense ability to be prepared for and
present evidence at the Daubert hearing was contingent on
approval of additional funding for an expert. . . . The
defense has no funds to pay the expert to prepare for and
testify at the Daubert hearing and at trial."). Furthermore,
Mr. Fisher "provides no argument, or proof, that had there
been a continuance, the 'chemist would have been able to place
reasonable doubt' on the government's chemist witnesses who
analyzed the seized controlled substances." (Civ. Doc. # 12
at 21).

Mr. Fisher also asserts that counsel should have
"file[d] an interlocutory appeal asking the appeals court to
review the district court's factual findings and its legal
conclusions, regarding the decision rendered by the judge, at
the Daubert hearing." (Civ. Doc. # 1 at 6); see also (Civ.
Doc. # 1-1 at 5). This argument also fails. There was no

27

jurisdictional basis for the Eleventh Circuit to hear an interlocutory appeal of the Magistrate's non-final order about additional funding. See Shalhoub, 855 F.3d at 1260 ("We apply the final judgment rule with 'utmost strictness in criminal cases,' unless the challenged order falls within the collateral order doctrine, which permits appellate review of an interlocutory order that (1) 'conclusively determine[s] the disputed question,' (2) 'resolve[s] an important issue completely separate from the merits of the action,' and (3) is 'effectively unreviewable on appeal from a final judgment.'" (citations omitted)). Thus, it was neither deficient performance nor prejudicial for trial counsel to not file such an interlocutory appeal.

The Motion is denied as to this Ground.

### G.   **Ground Six**

According to Mr. Fisher, trial counsel, Mr. Martin, was ineffective because he "failed to challenge the sufficiency of the indictment regarding the charges his client was found not guilty of." (Civ. Doc. # 1 at 7). Mr. Fisher insists that the Court would have dismissed the indictment as to Count Seven, the one count for which the jury found Mr. Fisher not guilty. (Id.). If this count had been dismissed pretrial, Mr. Fisher believes he would have been "in a better position in

the negotiation stages for a plea bargain" and would have received "a plea agreement that would have lessened his sentencing exposure." (Id.).

This argument fails. Counsel was not ineffective for not moving to dismiss the indictment as to Count Seven because such a motion would have been denied as meritless. See United States v. Hinds, 2 F. App'x 420, 423 (6th Cir. 2001) ("Trial strategy includes the decision not to file certain motions if, after investigation, doing so would not be necessary or advantageous."). The indictment properly tracks the language of the statute for Count Seven regarding possession of pentylone. (Crim. Doc. # 1 at 5); see United States v. Woodruff, 296 F.3d 1041, 1046 (11th Cir. 2002) ("[A]n indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" (citation omitted)). The fact that the jury acquitted Mr. Fisher of this count does not support that the indictment was improperly pled for this count.

Likewise, Mr. Fisher suffered no prejudice because such a motion to dismiss would have been denied. See Winfield, 960

F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."); <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1308-09 (11th Cir. 2003) (explaining that the defendant had to show a reasonable probability that, had a motion to dismiss the indictment been filed, it would have been granted). Thus, the Motion is denied as to this Ground.

### H.    **First Ground Seven**

In his first ground challenging appellate counsel's performance, Mr. Fisher argues that appellate counsel, Mr. Farmer, was ineffective for "fail[ing] to file a claim on direct review that [Mr. Fisher's] sentence [violated] the <u>Apprendi</u> Rule, where the evidence did not bear sufficient indicia of reliability to support his sentence of 360 months." (Civ. Doc. # 7-8).[3] His sentence was "a great disparity to

---

[3] Although Mr. Fisher mentions <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), in this one sentence, he does not actually raise a claim based on <u>Apprendi</u>. Indeed, the substance of this Ground concerns the alleged sentencing disparity between Mr. Fisher and his co-defendant and co-conspirators. This does not relate to the rule announced in <u>Apprendi</u>. <u>See</u> <u>Id.</u> at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Furthermore, here, the jury found Mr. Fisher guilty and found that his crimes involved various controlled substances in varying amounts. (Crim. Doc. # 200 at 1-5). Thus, <u>Apprendi</u> was not violated.

his co-defendant's sentence" and this disparity "alone should have prompted appellant counsel to submit the issue regarding his client's sentencing disparity." (Id. at 8).

This argument fails. Appellate counsel, who also represented Mr. Fisher at sentencing, raised the issue of the sentencing disparity with the Court in his sentencing memorandum and at sentencing. (Crim. Doc. # 248; Crim. Doc. # 270 at 28-29). Mr. Fisher faced a guidelines sentence of life in prison, but the Court varied downward to 360 months' imprisonment largely because of counsel's argument about sentencing disparities. (Crim. Doc. # 270 at 30-31, 33-34). While the 360-month sentence is still significantly longer than the sentences Mr. Fisher's co-defendants and co-conspirators received, the disparity reflects that the co-defendant and co-conspirators all cooperated significantly with law enforcement and testified against Mr. Fisher, who was an organizer of the drug conspiracy. (Id. at 28-29; Crim. Doc. # 248 at 3).

Mr. Farmer avers in his affidavit: "Given both [the] obvious distinctions between [Mr.] Fisher and his co-conspirators, and the fact that this Court mitigated the disparity in sentences by a substantial variance from life to 360 months, I concluded the there was no reasonable basis to

believe that the appellate court could find that this Court nonetheless committed reversible error by imposing a sentence that was unlawfully disparate." (Civ. Doc. # 12-3 at 4). The Court agrees.

Considering that Mr. Fisher had received a below-guidelines sentence as a result of counsel's argument about the sentencing disparity, counsel was not ineffective for not raising the sentencing disparity on appeal. See Card, 911 F.2d at 1520 ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). An appellate advocate does not have to raise every nonfrivolous issue. Jones v. Barnes, 463 U.S. 745, 753-54 (1983). Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." Heath v. Jones, 941 F.2d 1126, 1131 (11th Cir. 1991). Even if appellate counsel is deficient, failure to raise an argument on appeal is not prejudicial unless the neglected argument would have a reasonable probability of success on appeal. Id. at 1132. There was no such reasonable probability of success on appeal here.

In short, Mr. Fisher has not proven that appellate counsel was ineffective for not raising a sentencing disparity argument on direct appeal. Nor has Mr. Fisher shown

that raising this argument on appeal would have likely resulted in a lower sentence, as necessary to establish prejudice. The Motion is denied as to this Ground.

## I.  **Second Ground Seven**

Next, in his second Ground Seven, Mr. Fisher contends that appellate counsel, Mr. Farmer, was ineffective for "fail[ing] to frame the issue noted in Ground One of this Motion." (Civ. Doc. # 1 at 8). "[T]he 404(b) evidence presented in trial, without hearing, deprived [Mr. Fisher] of the right to a fair trial and this issue should have been raised on direct review." (Id.). According to Mr. Fisher, he was prejudiced by "not having the appeals court review the issue." (Id.).

The Court disagrees. Counsel was not ineffective for failing to raise the 404(b) argument on appeal as to either Knott or Hernandez. Because trial counsel had not objected to the relevant witnesses' testimony during trial, such argument would have been subject to the harsh plain error standard of review on appeal. And appellate counsel reasonably concluded that he could not satisfy the plain error standard regarding the alleged 404(b) testimony. See (Civ. Doc. # 12-3 at 5) ("I did not raise this issue because doing so would have been patently futile. . . . I reasonably concluded that I could

not satisfy even the first prong [of the plain error analysis], as there was no error in admitting Knott's testimony.").

Furthermore, as the Court discussed in denying Ground One, witnesses Knott and Hernandez did not present 404(b) evidence. Their testimony went directly to the charged money laundering counts. <u>See</u> (Civ. Doc. # 12 at 14) ("Neither Roman Hernandez nor Diane Knott testified about 404(b) evidence."); <u>see also</u> (Civ. Doc. # 12-1 at 5) (trial counsel averring "I believed the testimony of Ms. Knott was admissible"); (Civ. Doc. # 12-3 at 6) ("Knott's testimony was offered to support the money laundering offenses that were charged in the operative indictment. . . . The testimony was not extrinsic Rule 404(b) evidence, but intrinsic evidence directly relevant to charged counts."). So, the argument that these witnesses presented impermissible Rule 404(b) evidence is meritless and would have been rejected if counsel had raised it on appeal. <u>See</u> <u>Card</u>, 911 F.2d at 1520 ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). The Motion is denied as to this Ground.

## J.   <u>Ground Eight</u>

According to Mr. Fisher, appellate counsel, Mr. Farmer, was ineffective because he "failed to present the issue

regarding the jury instruction which the jury was prevented from considering whether [Mr. Fisher] was a part of a smaller conspiracy, or buyers-seller relationship." (Civ. Doc. # 1 at 8). Thus, this Ground is related to Ground Three.

This argument fails for the same reason as Ground Three. It was reasonable for trial counsel not to request a multiple conspiracies jury instruction. The Court likely would have denied a request for such instruction.

Furthermore, because trial counsel did not request such an instruction, appellate counsel would have had to satisfy the harsh plain error standard of review in arguing that it was erroneous for the Court not to give the multiple conspiracies instruction. (Civ. Doc. # 12 at 16). Appellate counsel correctly concluded that there was "no reasonable basis to believe that the absence of these instructions was erroneous in the first place, and clearly no reasonable basis to believe that this error, if it existed, was either plain or obvious, or affected substantial rights." (Civ. Doc. # 12-3 at 6). "In light of the standard pattern instruction this Court provided, [appellate counsel] concluded in [his] best professional judgment that [he] could satisfy none of the three prongs of the plain error standard." (Id.). Thus,

appellate counsel was not ineffective for failing to raise this argument on direct appeal.

The Motion is denied as to this Ground.

### K.   **Ground Nine**

Next, Mr. Fisher argues that appellate counsel, Mr. Farmer, was ineffective for "fail[ing] to present the issues regarding the Magistrate's Report and Recommendation, and the failure to respond by the prior attorney of record." (Civ. Doc. # 1 at 8). Thus, this ground is related to the first Ground Four. According to Mr. Fisher, appellate counsel "could have written a claim of ineffective assistance of counsel on this claim [on direct appeal] because the record clearly shows that prior counsel did not file an objection and the issues involves whether his client's Fourth Amendment rights were violated." (Id.).

This claim fails. As an initial matter, appellate counsel could not have raised an ineffective assistance of trial counsel claim on direct appeal. See United States v. Millwood, 961 F.2d 194, 195 (11th Cir. 1992) ("[W]e do not consider ineffective counsel claims on direct appeal from a conviction."); see also (Civ. Doc. # 12-3 at 7) (appellate counsel acknowledging that he "could not" raise a claim of ineffective assistance of trial counsel on direct appeal).

36

Thus, appellate counsel was not ineffective for not raising such argument. <u>See</u> <u>Card</u>, 911 F.2d at 1520 ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). Furthermore, Mr. Fisher was not prejudiced by the failure to do so.

Additionally, this claim fails for the same reason the first Ground Four fails. The motion to suppress lacked merit and would have been denied even if Mr. Fisher's counsel had filed an objection to the Report and Recommendation. For the same reason the motion to suppress was denied, the appellate court would not have reversed this Court's ruling on the motion to suppress.

The Motion is denied as to this Ground.

### L.   First Construed Ground in Fisher's Declaration

In his sworn declaration, Mr. Fisher includes multiple allegations that do not appear to relate to the Grounds in his Motion. In an abundance of caution, the Court will construe these additional allegations as additional grounds for relief.

The first construed Ground relates to multiple allegations of trial counsel's supposed poor performance in preparation for and during the hearing on the motion to suppress. In his declaration, Mr. Fisher asserts that trial

counsel, Mr. Martin, had discussed with him "a plan of defense which included him subpoenaing the traffic stop video, Google maps for traffic stop, and Uber Driver for purposes of Suppression Hearing and Trial." (Civ. Doc. # 1-1 at 1). But counsel "never subpoenaed any of the foregoing." (Id.). Mr. Fisher continues:

> At no time did counsel ever discuss with me a change in plans that we agreed upon, instead, counsel failed to subpoena the traffic stop video evidence for purpose of suppression hearing. Nor did counsel subpoena the Uber driver for purposes of suppression hearing. Nor did counsel present the Google maps for the traffic stop which would have provided a clearer picture of distance of where the traffic stop occurred, and the distance to the address where the search and seizure occurred.

(Id. at 1-2).

Additionally, Mr. Fisher alleges that he wanted to testify at the evidentiary hearing to "explain [his] side of what happened regarding the alleged traffic stop." (Id. at 3). However, according to Mr. Fisher, counsel "would not allow [him] the opportunity to take the witness stand when [Mr. Fisher] requested to do so." (Id.).

These arguments fail. Trial counsel was not ineffective for making the strategic decision not to call the Uber driver as a witness at the suppression hearing. The Uber driver was the person from whose vehicle Mr. Fisher was taken by police

to be detained for the duration of the search of Mr. Fisher's residence. As trial counsel explains, "[a]fter reviewing the law enforcement reports, discussing it with Mr. Fisher, and visiting the scene, [he] saw the Uber driver as a cumulative witness and not relevant to any contested issue." (Civ. Doc. # 12-1 at 4). This was a reasonable strategic choice for trial counsel to make.

Additionally, trial counsel reasonably advised Mr. Fisher not to testify at the suppression hearing because (1) trial counsel "did not think [Mr. Fisher] had anything to add to the evidence because his version of the stop/arrest/detention/location did not vary in any material or significant way from the law enforcement version," (2) "Mr. Fisher does not stay on point potentially opening the door to all sorts of areas for cross examination," and (3) "he has the tendency to change his version of events." (Id. at 1-2).

Even assuming that counsel was ineffective in relation to his presentation at the evidentiary hearing on the motion to suppress, Mr. Fisher cannot show prejudice. As discussed before regarding the failure to file an objection to the Report and Recommendation, Mr. Fisher's motion to suppress lacked merit. There was no basis to suppress the evidence

taken from Mr. Fisher's residence or his person. The search of the residence was conducted pursuant to a valid search warrant. And there was probable cause to arrest Mr. Fisher before the search was conducted, so even if the detention of Mr. Fisher during the search rose to the level of an arrest, it was permissible.

Even if Mr. Fisher or the Uber driver had testified at the hearing or his counsel had presented evidence from Google maps or video of the traffic stop, the motion to suppress still would have been denied. Thus, Mr. Fisher suffered no prejudice. The Motion is denied as to this construed Ground. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."); Card, 911 F.2d at 1520 ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").

**M.   Second Construed Ground in Fisher's Declaration**

In his declaration, Mr. Fisher avers the following:

> On the subject of trial, counsel never subpoenaed any witnesses who[se] testimony would be relevant to the defense of the conspiracy charges, or the illegal search and seizure of items presented during trial. Counsel was asked by me to contact the Uber Driver to testify to regarding his detainment and mine. Counsel never contacted the Uber Driver when he was requested to do so.

40

(Civ. Doc. # 1-1 at 2).

Mr. Fisher never specifically names the witnesses he faults trial counsel, Mr. Martin, for not calling to testify. Even as to the Uber driver in whose car Mr. Fisher was sitting when stopped by police for the search of Mr. Fisher's residence, Mr. Fisher does not provide a name. Mr. Fisher also is unclear on exactly what these witnesses' testimony would have been. He does not identify what exculpatory evidence the potential witnesses would have provided. See Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007) (explaining that "[o]rdinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim"). Indeed, Mr. Fisher did not submit affidavits from the potential witnesses setting forth their possible testimony. See Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009) (holding that the district court did not err in denying claim for ineffective assistance of counsel when movant did not provide an affidavit setting forth the testimony of the potential witness). Thus, his allegations are conclusory and insufficient to establish either deficient performance or prejudice. See Wilson v. United States, 962

F.2d 996, 998 (11th Cir. 1992) (per curiam) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)).

Additionally, the decision to call a witness is typically a strategic decision and there is a strong presumption that declining to call the witness was "sound trial strategy." Place v. United States, No. 09-10152-NMG, 2014 WL 2803740, at *3 (D. Mass. June 20, 2014); see also Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."). Given this, Mr. Fisher has not met his burden of establishing that counsel was ineffective. Indeed, regarding the Uber driver, trial counsel explained his strategic decision not to call him as a witness: "After reviewing the law enforcement reports, discussing it with Mr. Fisher, and visiting the scene, I saw the Uber driver as a cumulative witness and not relevant to any contested issue." (Civ. Doc. # 12-1 at 4). Trial counsel's decision regarding witnesses was reasonable.

The Motion is denied as to this construed Ground.

### N.   <u>Third Construed Ground in Fisher's Declaration</u>

Finally, Mr. Fisher also asserts in his declaration:

> During the time periods of being represented by the
> following attorney's, Mark Rodriguez and Kenneth
> Martin, I raised the issue regarding drugs being
> found in [] my storage unit, in a Maserati that I
> owned. The Maserati was returned to me 4 days after
> the seizure. I asked all attorneys at each stage to
> investigate my claim that the drugs found in the
> Maserati were planted.

(Civ. Doc. # 1-1 at 5).

This claim fails. As an initial matter, "counsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted). "The decision whether to present a line of defense, or even to investigate it, 'is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable.'" <u>Id.</u> (citation omitted); <u>see also</u> <u>Stephens v. United States</u>, 14 F. Supp. 2d 1322, 1331 (N.D. Ga. 1998) ("A decision not to investigate a potential defense, like other litigation decisions, need only be reasonable to fall within the range of professionally competent assistance." (citation omitted)).

Here, Mr. Martin explained in his affidavit why he did not pursue this theory: "In my review of the evidence, I did not see a legitimate theory to accuse law enforcement of planting evidence other than Mr. Fisher's argument that because law enforcement had his car, they must have planted evidence." (Civ. Doc. # 12-1 at 7-8). And, indeed, there was significant evidence of Mr. Fisher's drug possession and dealing besides the discovery of drugs in his Maserati.

There is no reason to think that the result of the trial would have changed if this theory had been presented. In fact, Mr. Fisher has presented no evidence to support the theory that drugs were planted in his Maserati. Thus, this conclusory allegation about the planted drugs theory is insufficient to establish entitlement to relief. See Wilson, 962 F.2d at 998 (per curiam) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)).

This construed Ground is denied.

## III. **Evidentiary Hearing**

As the Court readily determined that all of Mr. Fisher's Grounds besides Ground Two lack merit, no evidentiary hearing is required as to those Grounds. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively

44

show that the prisoner is entitled to no relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015)("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

However, an evidentiary hearing is needed on Ground Two of the Motion. "Rule 8(c) of the Rules Governing § 2255 Proceedings provides that '[i]f an evidentiary hearing is required, the judge shall appoint counsel for a movant who qualifies for the appointment of counsel under 18 U.S.C. § 3006A(g)[.]'" Shepherd v. United States, 253 F.3d 585, 587 (11th Cir. 2001). Section 3006A "allows for the appointment of counsel when the interests of justice so require and the movant is financially unable to obtain representation." Id. To that purpose, the Court requests that Magistrate Judge Wilson please appoint counsel to represent Mr. Fisher at the evidentiary hearing.

## IV. Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied

As to the Grounds that the Court has denied, the Court declines to issue a certificate of appealability because Mr. Fisher has failed to make a substantial showing of the denial

of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Fisher to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Fisher shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Dion Fisher's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 281) is **DENIED** in part and **DEFERRED** in part.

(2)  The Motion is denied as to Grounds One, Three, First Four, Second Four, Five, Six, First Seven, Second Seven, Eight, Nine, and all construed Grounds. Judgment on these claims will not be entered at this time.

(3)  The Court defers ruling on Ground Two pending an evidentiary hearing. The evidentiary hearing will solely be held to address the merits of Ground Two, and the Court will not permit Mr. Fisher to amend that Ground or add additional grounds.

(4)  The Clerk is directed to set this case for an evidentiary hearing.

(5)   Pursuant to Rule 8(c) of the Rules Governing § 2255 Proceedings, the Court finds that counsel should be appointed to represent Mr. Fisher at the evidentiary hearing. The Court asks that Magistrate Judge Wilson please appoint counsel to represent Mr. Fisher.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>29th</u> day of August, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE